**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**CHRISTOPHER DEATON
ADC #143472**                                                                   **PLAINTIFF**

**V.**                            **CASE NO. 5:14-CV-230 JLH/BD**

**JIM SMITH, et al.**                                                           **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge J. Leon Holmes.  You may file written objections to this

Recommendation.  If you file objections, they must be specific and must include the

factual or legal basis for your objection.  Your objections must be received in the office of

the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Holmes can adopt this Recommendation without

independently reviewing the record.  By not objecting, you may also waive any right to

appeal questions of fact.

**II.     Background:**

Christopher Deaton, an Arkansas Department of Correction ("ADC") inmate, filed

this lawsuit pro se under 42 U.S.C. § 1983.  (Docket entry #2)  In his complaint, he

alleged that the Defendants retaliated against him for filing a previous civil lawsuit and

for filing various grievances.  He also claimed that the manner in which the ADC

grooming policy is implemented infringed on his right to receive medical treatment, to

attend yard call, and to attend both disciplinary and classification hearings.  Mr. Deaton named six Defendants and sought declaratory and monetary relief.

Defendants moved to dismiss Mr. Deaton's claims against them on a number of grounds.  (#13)  The motion was granted in part, and denied in part.  (#41)  Mr. Deaton's claims for monetary damages against the Defendants in their official capacities were dismissed.  In addition, Mr. Deaton's claims relating to any federal and state criminal causes of action against the Defendants were also dismissed   Mr. Deaton was permitted to proceed on the remaining causes of action.

Defendants have now moved for summary judgment on Mr. Deaton's remaining claims.  (#44)  Mr. Deaton has responded to the Defendants's motion. (#51, #52)  Based on the undisputed evidence presented, the Court recommends that the Defendants' motion (#44) be GRANTED.

## III.   Discussion:

### A.     Standard

Summary judgment is granted to a party when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  A moving party must first present evidence that there is no genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

If the moving party meets this burden, the nonmoving party must come forward with evidence showing that there is a genuine dispute that must be decided at a trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If the nonmoving party does not submit enough proof to establish a necessary element of a claim, the moving party is entitled to judgment on that claim.  *Celotex Corp.*, 447 U.S. at 322-23, 106 S.Ct. at 2552.

      B.     Exhaustion

Defendants first argue that Mr. Deaton failed to exhaust his administrative remedies with regard to his claims against Defendants Smith, Harris, and Gilbert, and that his claims against these Defendants must be dismissed, without prejudice.  In addition, Defendants contend that Mr. Deaton failed to exhaust his administrative remedies regarding his claim that, in July 2013, he was transferred from the East Arkansas Regional Unit ("EARU") to the Varner Supermax Unit ("VSMU") in retaliation for filing a previous civil rights lawsuit against the named Defendants.

The Prison Litigation Reform Act requires the Court to dismiss any claim that was not fully exhausted prior to the filing a civil lawsuit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a) (declaring, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the proper exhaustion of remedies "means using

all steps that the [prison] holds out, and doing so properly"); *Johnson v. Jones*, 340

F.3d 624, 627 (8th Cir. 2003) (holding an inmate must exhaust all available

administrative remedies before filing suit, and "[i]f exhaustion was not completed at

the time of filing, dismissal is mandatory").  Furthermore, an inmate's subjective beliefs

regarding exhaustion are irrelevant in determining whether administrative procedures are

available.  See *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

        1.      Defendant Harris

In his response to the Defendants' motion, Mr. Deaton concedes that he did not

fully exhaust his claims against Defendant Harris prior to filing this lawsuit.  (#51-1 at

p.6)  As a result, the Court recommends that Mr. Deaton's claims against Defendant

Harris be DISMISSED, without prejudice.

        2.      Defendant Smith

In his response to the Defendants' motion, Mr. Deaton also argues that he could

not have exhausted his claim against Defendant Smith because Defendant Smith is not

employed by the Arkansas Department of Correction.  Rather, he is employed by the

Board of Corrections.  (#44-7 at p.1)  Because the ADC inmate grievance procedure does

not allow inmates to grieve "matters beyond the control of the Department of Correction,"

there was no administrative procedure available for Mr. Deaton to bring his claim against

Defendant Smith.  The Court agrees.  As a result, Defendant Smith is not entitled to dismissal based on Mr. Deaton's failure to exhaust administrative remedies.[1]

3.      Defendant Gilbert

Defendants also argue that Mr. Deaton failed to exhaust his administrative remedies against Defendant Gilbert.  In support of their motion, Defendants attach a declaration by Terri Grigsby Brown, the ADC inmate grievance supervisor.  (#44-16 at p.1)  She testifies that Mr. Deaton failed to fully exhaust any grievance against Defendant Frederick Gilbert.  (#44-16 at p.7)

Based on a review of the grievances Defendants attach to their motion, Defendant Gilbert was mentioned in two of Mr. Deaton's grievances, VSM-14-00347 and VSM-14-00830.  (#44-5 at p.1; #44-10 at p.1)  In both of those grievances, however, Mr. Deaton's primary complaint was that Defendant Stevens ordered Defendant Gilbert to issue Mr. Deaton a disciplinary in retaliation for Mr. Deaton's use of the grievance process.  In response to grievance VSM-14-00347, the Warden focused only on Defendant Stevens's conduct, and did not reference Defendant Gilbert.  (#44-5 at p.3)  It is undisputed that Mr. Deaton did not fully exhaust grievance VSM-014-830 because he did not comply with appeal requirements.  (#44-10 at p.4)

---

[1]  The Court also notes that Mr. Deaton referenced Defendant Smith in grievance VSM 13-02749.  In that grievance, he explained that he wrote Defendant Smith informing him that he had been subjected to a retaliatory transfer.  (#44-2 at p.1)

Mr. Deaton has not presented any other evidence showing that he fully exhausted any other grievance regarding Defendant Gilbert.  Because Mr. Deaton's claims against Defendant Gilbert are separate from those asserted against Defendant Stevens, he must have fully exhausted his claim that Defendant Gilbert issued him a false disciplinary in order to proceed on that claim.  Here, based on the grievances presented, only Defendant Stevens's conduct was investigated.  As a result, the Court recommends that Mr. Deaton's claims against Defendant Gilbert be DISMISSED, without prejudice, based on his failure to exhaust.

4.      Retaliatory Transfer Claim

In her declaration, Ms. Brown testified that Mr. Deaton complained that he was subjected to a retaliatory transfer in grievance VSM-13-2749.  (#44-2 at p.1)  In that grievance, however, the only Defendant identified is Defendant Smith.  (*Id*.)  All Defendants (except Defendant Smith) are entitled to dismissal on the retaliatory-transfer claim based on Mr. Deaton's failure to exhaust administrative remedies on this claim.

C.      Request for Injunctive Relief

In his complaint, Mr. Deaton seeks injunctive relief.  Specifically, he asks that the Court: prohibit the Defendants from issuing him disciplinary violations for his failure to follow the ADC grooming policy; prohibit the Defendants from enforcing the ADC grooming policy; order that the Defendants transfer him to non-punitive housing.

In their motion for summary judgment, Defendants argue that Mr. Deaton's claims for injunctive relief are now moot for several reasons.  First, Mr. Deaton's Nazarite vow ended in November 2014.  (#44-15 at pp.3-4)  At that time, Mr. Deaton voluntarily shaved his head and beard.  (#44-17)  Shaving his head and beard brought Mr. Deaton into compliance with the ADC's then-grooming policy.  As a result, he was eligible to be housed at a lower level unit.  Mr. Deaton was transferred to the Randall L. Williams Complex and is now housed in general population.   He is no longer subject to disciplinary confinement.  (#40; #44-17 at p.2)  Furthermore, in February 2015, the ADC adopted a revised grooming policy that permits inmates to request a religious exemption to the grooming policy.  (#44-14)  As a result, Mr. Deaton's claims for injunctive relief should now be DISMISSED, as moot.

D.      Retaliation - Enforcement of the Grooming Policy

Here, Mr. Deaton does not directly challenge the ADC grooming policy under either the Religious Land Use and Institutionalized Persons Act ("RLUIPA") or the First Amendment; rather, Mr. Deaton argues that the Defendants implemented the ADC grooming policy in a manner that violates his constitutional rights.  He explains that if he remained in his cell, it was unlikely that he would receive a disciplinary.  If, however, he left his cell to attend yard call, to attend classifications or disciplinary hearings, or to seek medical treatment, he risked being disciplined.  Mr. Deaton claims that he was routinely

threatened with disciplinary action if he left his cell.  He categorizes such behavior as

"blackmail," but this is essentially a retaliation claim.[2]

To prove retaliation, a prisoner must show that: he engaged in constitutionally

protected activity; defendants took adverse action against him that would chill a person of

ordinary firmness from engaging in that activity; and retaliation was the actual motivating

factor for the adverse action.  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Revels*

*v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

At the time Mr. Deaton filed this lawsuit, the ADC grooming policy had not yet

been held unconstitutional or in violation of federal law.  On January 20, 2015, the United

States Supreme Court ruled that the ADC's prohibition of a half-inch beard for religious

purposes violated RLUIPA.  *Holt v. Hobbs*, 135 S.Ct 852 (2015).  As a result, prior to

January 2015, Mr. Deaton had not engaged in any federally protected activity, and his

claim that he was disciplined for exercising his religious beliefs should be dismissed.

---

[2] In his response to the Defendants' motion, Mr. Deaton again argues that he has stated a claim against the Defendants under the "calculated harassment doctrine."  He argues that in *Scher v. Engelke*, 943 F.2d 921 (8th Cir. 1991), the Eighth Circuit recognized that an inmate could claim an eighth amendment violation for "a pattern of calculated harassment unrelated to prison needs from which the U.S. Supreme Court has stated that prisoners are protected."  *Id*. at 924.  In *Scher*, an inmate was allowed to proceed on his claim that he was subjected to ten cell searches in nineteen days "under circumstances which a jury would be justified in finding were motivated by retaliation." *Id*.  Here, however, at the time he filed this lawsuit, Mr. Deaton failed to sufficiently allege that he was retaliated against for engaging in constitutionally protected activity. His *Scher* argument unpersuasive.

E.        Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on Mr. Deaton's claims regarding the enforcement of the ADC grooming policy.  Qualified immunity "is an immunity from suit rather than merely a defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  Analyzing a claim of qualified immunity requires a two-step inquiry.  *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012)  First, the court must determine whether the facts demonstrate a deprivation of a constitutional right.  *Id.* (citing *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)).  And second, the court determines whether the implicated right was clearly established at the time of the deprivation.  *Id.* (citing *Parrish*, 594 F.3d at 1001).  At this stage in litigation, the Court is required to view the facts in the light most favorable to Mr. Deaton.

Although qualified immunity does not apply to Mr. Deaton's request for injunctive or declaratory relief, it does apply to his claims for monetary damages.[3]  *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009) (qualified immunity shields government officials from civil damages unless conduct violates clearly established constitutional or statutory right of which reasonable person would have known).

---

[3] Defendants correctly argue that Mr. Deaton is not entitled to compensatory damages because he did not suffer any physical injury.  The law is settled that an inmate cannot recover compensatory damages for emotional injury alone.  42 U.S.C. § 1997e(e).  It is possible, however, that he could recover nominal or punitive damages, depending on the evidence.

Here, to the extent that Mr. Deaton challenges the ADC grooming policy, Defendants are entitled to qualified immunity. At the time Mr. Deaton filed this lawsuit, the law was not clearly established that Defendants had to accommodate Mr. Deaton's religious rights with regard to the ADC grooming policy. In fact, the Eighth Circuit had specifically upheld the ADC grooming policy with respect to facial hair. See *Fegans v. Norris*, 537 F.3d 897 (8th Cir. 2008). Because the Defendants could not have known that they were violating Mr. Deaton's first amendment rights when they disciplined him for violating the ADC grooming policy, Mr. Deaton's claims relating to the ADC grooming policy, as well as the enforcement of that policy, should be dismissed.

F.      Retaliation - Other First Amendment Claims

Mr. Deaton also claims that: he was transferred to a different ADC unit in retaliation for filing a previous civil lawsuit; he was held in punitive isolation for more than sixty days without review in retaliation for participating in the grievance process; he was denied legal paper in retaliation for participating in the grievance process; he was moved to punitive isolation in retaliation for participating in the grievance procedure; the disciplinary that he received in February 2014 was issued in retaliation for his use of the grievance procedure.

1.      Transfer

First, Mr. Deaton claims that on July 8, 2013, he was transferred from the EARU to the VSMU. He explains that he was transferred as a result of filing another civil rights

lawsuit in September of 2014.  As noted, Mr. Deaton exhausted this claim only as to

Defendant Smith.  Although he exhausted this claim as to Defendant Smith, Mr. Deaton

has not come forward with any evidence to show that Defendant Smith was involved in,

or responsible for, the transfer at issue.  Furthermore, he has not come forward with any

evidence showing that Defendant Smith acted with any retaliatory motive in failing to

assist him after the transfer.  See *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007)

(explaining that, to avoid summary judgment, a prisoner must "submit affirmative

evidence of a retaliatory motive"); *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006)

(same).  Without any evidence, this claim fails as a matter of law.

      2.     Move to Punitive Housing

Mr. Deaton alleges that on January 31, 2014, Defendant Jackson moved him to

punitive housing in retaliation for Mr. Deaton's having filed a grievance against

Defendant Jackson on January 9, 2014.  (#2 at pp.8-10)  Mr. Deaton complained about his

transfer to punitive housing in grievance VSM-14-501.  (#44-6 at p.1)  In response to that

grievance, the Warden explained that Mr. Deaton was "moved due to a pending

disciplinary for violation of ADC Grooming Policy."  (#44-6 at p.3)

Again, at the time this grievance was addressed, the ADC grievance policy had

been upheld as valid.  Furthermore, Mr. Deaton has not come forward with any evidence

showing that Defendant Jackson had any retaliatory motive when he moved Mr. Deaton

to punitive housing.  See *Lewis v. Jacks*, *supra*.  As a result, this claim should also be dismissed.

>    3.    Denial of Paper

Mr. Deaton complains that in February 2014, personnel in the law library stopped supplying him with legal paper.  (#2 at p.17)  He alleges that "upon information and belief, the denial of paper to draft legal documents was a retaliatory response from the grievances written by the plaintiff."  (#2 at p.18)  Mr. Deaton does not allege that any of the Defendants instructed ADC personnel to stop providing him legal papers; nor has he presented any evidence to support this claim.   As a result, this claim should also be dismissed.

>    4.    Failure to Provide Due Process Hearing

Mr. Deaton claims that he was held on punitive status, and remained housed in punitive housing, for sixty days without having been found guilty of a disciplinary and without a "due process hearing."  (#2 at p.19)  He alleges that he notified Ms. Washington that he should no longer be assigned to punitive status, but that she failed to remedy the problem.  He claims that this was "another retaliatory response."  (*Id*.)

Mr. Deaton fails to attribute any retaliatory conduct, however, to any of the Defendants named in this lawsuit.  And he has not presented any evidence of retaliatory motive.  As a result, this claim also should be dismissed.

5.      Falsification of Disciplinary Report

Last, Mr. Deaton complains that Defendant Gilbert "committed conspiracy to commit retaliation by intentionally falsifying the disciplinary report written on the plaintiff on February 24, 2014."  The Court has already determined that Mr. Deaton failed to fully exhaust his administrative remedies regarding his claim against Defendant Gilbert.[4]  (#2 at p.14)

E.      Deliberate Indifference Claims against Defendants Smith

Defendants also argue that Mr. Deaton's deliberate-indifference claim against Defendant Smith should be dismissed because his allegations are insufficient to support a deliberate-indifference claim.  They argue that, based on Mr. Deaton's allegations, Defendant Smith enabled Mr. Deaton to receive medical care.

In order to establish this constitutional violation, Mr. Deaton must show that the conditions of his confinement posed a substantial risk of serious harm (objective component), and that Defendants Smith actually knew of, but disregarded or was deliberately indifferent to, his health or safety (subjective component).  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003); *Jackson v. Everett*, 140 F.3d 1149, 1151

---

[4] Mr. Deaton attaches the February 24, 2014 disciplinary report papers to his complaint.  (#2 at p.61-63)  Based on these papers, Mr. Deaton was punished for being in violation of the ADC grooming policy.  Again, at that time, the grooming policy had been upheld as permissible.  This forecloses Mr. Deaton's retaliation claim regarding the February 24, 2014 disciplinary against Defendant Gilbert.  See *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

(8th Cir. 1998).  Mr. Deaton has not included facts in his complaint sufficient to support a deliberate-indifference claim against Defendant Smith.  This claim fails as a matter of law.

**IV.    Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#44) be GRANTED.  Mr. Deaton's claims against Defendant Harris should be DISMISSED, without prejudice, based on his failure to exhaust his administrative remedies.  In addition, his claim that he was transferred to another ADC Unit in retaliation for filing another civil rights lawsuit should be DISMISSED, without prejudice, based on his failure to exhaust this claim against all Defendants, except Defendant Smith.  His retaliatory transfer claim against Defendant Smith should be DISMISSED, with prejudice.  All other claims should be DISMISSED, with prejudice.

Dated this 26th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE